IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 6, 2003 Session

## KATHY MARIE PARKER v. BOBBY LEE PARKER, JR.

**Appeal from the Chancery Court for Bedford County**
**No. 22,225      J. B. Cox, Judge**

---

**No. M2001-01453-COA-R3-CV - Filed June 25, 2003**

---

The trial court granted the parties a divorce, and awarded them joint custody of the three children of their marriage, with the mother to exercise primary custody. The court's order included a detailed visitation schedule, which did not mention Mother's Day. After the children spent their first post-divorce Mother's Day with the father, the mother moved the court to be granted Mother's Day visitation. The court granted the motion, and assessed attorney fees against the father. The father appeals the award of attorney fees. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM C. CAIN, JJ., joined.

Bobby Lee Parker, Jr., Shelbyville, Tennessee, Pro Se.

Michelle M. Benjamin, Winchester, Tennessee, for the appellee, Kathy Marie Parker.

**OPINION**

**I.**

On December 1, 1999, the Chancery Court of Bedford County granted a divorce to Kathy Marie Parker and Bobby Lee Parker Jr., pursuant to Tenn. Code Ann. § 36-4-129. The court ratified the agreement of the parties as to the custody of their two minor children, child support, division of marital property, and assumption of marital indebtedness. Legal custody of the children was awarded jointly to both parties, with primary physical custody to remain with the mother. The father was to exercise visitation in accordance with a detailed schedule. One unusual provision of the Decree was a requirement that the father transfer the children to the mother's supervision at the Estill Springs Police Department.

The father's visitation rights included every other weekend and every Wednesday night during the school year, with visitation and custody reversed during the summer. Additionally, the parties were directed to alternate custody on Thanksgiving, Easter and other holidays. Mr. Parker was granted Father's Day each year, but there was no mention of Mother's Day in the court's decree.

In the year 2000, Mother's Day fell on one of the weekends that the father was exercising visitation. At 8:00 that morning Ms. Parker called her former husband to ask if she could have the children. Mr. Parker had dressed them for church, and he told her that she could have them after services were finished. The father testified that when the mother showed up at church "she caused a disturbance," and he didn't let her take the children. He did not allow her to see the children until the following day.

Not wishing a repeat of the same problem in the future, Ms. Parker attempted to obtain an informal agreement with the father to let her have the children on Mother's Day the following year. He refused to talk to her about it during transfers of custody, allegedly because he believed it was against the law to speak about matters of custody or visitation in front of the children. The mother testified that he also declined to discuss the question on the phone, saying he had other things to do.

The mother then had her attorney prepare an Agreed Order setting out the Mother's Day modification she desired. Mr. Parker refused to sign. He later testified that he objected to a provision in the proposed Agreed Order that required him to drop the children off at the mother's home. He stated that in light of the bitter feelings between the parties, such an arrangement was dangerous. The proposed order is not in the record, so we cannot affirm his account of its contents.

On March 30, 2001, Ms. Parker filed a motion captioned "Motion to Set Mother's Day Visitation Ex Parte, or in the Alternative Upon a Hearing in this cause. The Motion recited her belief that "unless directly ordered by the Court [the father] will refuse to allow her to have visitation with the minor children on Mother's Day, May 13, 2001, as the holiday occurs during his regular weekend visitation." She asked the court to order Mr. Parker to deliver the children to her home on Mother's Day at 8:00 a.m. She also asked that he be required to reimburse her $500 for attorney fees, and to pay court costs.

The court scheduled a hearing for May 4. Mr. Parker appeared at the hearing pro se, and asked for a continuance, which was denied. Mr. Parker testified that "I have no trouble with Mother's Day. She needs them on Mother's Day." But he also expressed reluctance to let Ms. Parker have the children for the whole day. At the conclusion of the proof, the trial court found in favor of the mother.

The final order, filed May 8, 2001, is mistakenly captioned "Agreed Order." It granted Ms. Parker Mother's Day visitation every year, beginning at 8:00 a.m. with exchange of the children for visitation to take place at the Estill Springs Police Department. Mr. Parker was also ordered to pay the mother $500 for attorney fees. Mr. Parker filed a Motion for a new hearing. The court conducted a hearing on Mr. Parker's motion, at which he again appeared pro se, while the mother

was represented by counsel. The court affirmed its previous order, but did not order Mr. Parker to pay the additional attorney fees incurred at this hearing. Mr. Parker appealed.

## II.

The appellant argues that while he was not opposed to letting his former wife spend Mother's Day with the children, he had legitimate concerns about the timing and conditions of their transfer, which were not addressed by her proposed Agreed Order or by her Motion for Visitation, and thus that it was not appropriate to punish him by making him pay his former's wife's attorney fees. He admits that he could have drafted an agreed order that addressed his concerns, and submitted it to Ms. Parker for her consideration, but he claims that because of his ignorance of legal matters, he was not aware that this was an option.

Ms. Parker responds that her former husband used a legal technicality to withhold the children from her on Mother's Day 2000, and that he is continuing to use the court system as a weapon to punish her financially. She concludes that the trial court was correct to make him pay the attorney fees she incurred because of his obstructionist tactics.

Regardless of which of these versions is true (and we suspect there is some truth in both of them) it is unfortunate when the bitterness of a divorce prevents parents from effectively communicating with each other, forcing them to go to court to resolve questions that they should be capable of dealing with themselves.

As the appellee points out, Tenn. Code Ann. § 36-5-103(c) gives the court the authority to order the payment of attorney fees incurred in enforcing any decree for alimony, child support, or child custody, or for change of custody, with such award to remain "in the discretion of the trial court." This court held in *D. v. K.*, 917 S.W.2d 682, 686 (Tenn. Ct. App. 1995), that when visitation rights are an adjunct to a custody decree, proceedings involving those rights fall under this statute as well.

The original Decree of Divorce contained no provision for Mother's Day visitation, so Ms. Parker's attorney fees cannot be considered to have been incurred as part of an action for enforcement of a decree. But since the plaintiff in this case, like the plaintiff in *D. v. K., supra,* succeeded in having a custody decree modified, the trial court was authorized to order payment of attorney fees under Tenn. Code Ann. § 36-5-103(c).

Mr. Parker notes that the original Decree was drafted by Ms. Parker's attorney, and he argues that she should bear the costs associated with amending it. There is also an implicit argument that since the court's "Agreed Order" provided for transfer of the children in the manner he preferred, she should not be considered the prevailing party.

It appears to us, however, that Mr. Parker had ample opportunity to resolve this matter without forcing Ms. Parker to resort to the courts. His in-court statement that he thought the mother

should have custody of the children on Mother's Day was inconsistent with his previous refusal to discuss the matter. The trial judge did not specifically state his reason for ordering Mr. Parker to pay Ms. Parker's attorney fees, but he no doubt believed that the father's resistance to a modification in the visitation schedule that even the father considered necessary was the reason those fees had to be incurred in the first place. We do not believe the trial court abused its discretion in ordering him to pay the mother's attorney fees.

## III.

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Bedford County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Bobby Lee Parker, Jr.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.